**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**ANTONIO M. MCINTOSH,**

            **Plaintiff,**           **CIVIL ACTION NO. 07-CV-12969**

      **vs.**                   **DISTRICT JUDGE GEORGE CARAM STEEH**

                                **MAGISTRATE JUDGE MONA K. MAJZOUB**

**COMMISSIONER OF**
**SOCIAL SECURITY,**

            **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

**I.**    **RECOMMENDATION:**    Plaintiff's Motion for Summary Judgment (docket nos. 23, 27) should be DENIED, that of Defendant (docket no. 26) GRANTED, and the case DISMISSED.

\*\*\*

**II.**    **PROCEDURAL HISTORY:**

Plaintiff filed an application for Disability, Disability Insurance Benefits and Supplemental Security Income on March 31, 2003, alleging that he had been disabled and unable to work since March 26, 2003 as a result of a gunshot wound to the back, problems with the use of his right arm and a punctured lung. (TR 31-33, 41). The Social Security Administration denied benefits. (TR 26-29). A requested *de novo* hearing was held via video on July 10, 2006 before Administrative Law Judge Robert C. Asbille (ALJ). (TR 23). The administrative law judge subsequently found that the claimant had the residual functional capacity (RFC) to perform a significant range of light work existing in the economy and was not entitled to a period of disability or Disability Insurance Benefits or Supplemental Security Income because he was not under a disability at any time from March 26, 2003 through the date of the July 26, 2006 decision. (TR 22-23). The Appeals Council denied

review of the ALJ's decision.  (TR 6-9).  The parties filed Motions for Summary Judgment and the

issue for review is whether Defendant's denial of benefits was supported by substantial evidence on

the record and whether there is new and material evidence warranting remand.

## III.   PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE AND VOCATIONAL EXPERT TESTIMONY

### A.      Plaintiff's Testimony

Plaintiff was 33 years old at the time of the hearing.  (TR 278).  Plaintiff has a tenth grade

education.  (TR 280).  He testified that he dropped out of school and it was "a stupid choice."  (TR

280).  For the ten years prior to March 26, 2003 Plaintiff had worked as a back up chef and salad

preparer at the Sign of the Beef Carver where he prepared salads and carved beef for sandwiches.

(TR 42, 280-81).  On March 27,2003 Plaintiff suffered a gunshot wound to his back.  (TR 278).  In

March 2003 Plaintiff reported that the injuries and conditions limiting his ability to work were a

gunshot to his back, his inability to use his right arm and a punctured lung.  (TR 41, 47).  Plaintiff

testified that because of his injury he could no longer lift the 100 pound roast beef at his job.  (TR

281).  He also testified that the restaurant where he worked closed sometime around 2005.  (TR

281).   Plaintiff testified that he is 5' 7" tall and weighs 125 pounds.  (TR 278).  He stated that he

lost weight because he lost his appetite following the injury.  (TR 278).  Plaintiff lives with his

mother and has a four year old son whom he sees every other weekend.  (TR 279).  He takes his son

to the park, reads to him and feeds him.  (TR 284-85).  During the day, Plaintiff reads different

novels and the Bible and helps his mother make sure she takes her medication.  (TR 285).  In April

2003 Plaintiff reported that he reads for about for a half-hour at a time.  (TR 64).  When asked by

the ALJ, Plaintiff agreed that he sometimes has trouble remembering what he read.  (TR 286).

Plaintiff's mother does the housework, however, Plaintiff takes out the garbage when it is

2

"not too heavy" and vacuums.  (TR 284).  He watches television for three to four hours per day.  (TR 64).  Plaintiff's mother drove him to the hearing.  Plaintiff did not have a driver's license at the time of the hearing because it had been suspended for careless driving and an unsigned registration.  (TR 280).  Plaintiff testified that prior to his injury he had friends with whom he played basketball but he no longer has friends because he cannot do the activities they used to do together.  (TR 286).

Plaintiff testified that since the gunshot injury he now has pain in the middle of his lower back and neck and the pain has become progressively worse.  (TR 290).  He testified that some days he has back cramps and cannot get out of bed.  (TR 291).  He rates his pain at a seven on a scale of ten.  (TR 290).  To manage his pain he takes Motrin 800, uses the topical application Icy Hot and soaks in a bathtub every other night.  (TR 262, 290).  Plaintiff's stated that his primary doctor since the gunshot injury is Dr. Williams.  (TR 292).  He testified that there was almost an entire year when he did not see her because he was located in Alabama with his sick great-grandmother for approximately nine months.  (TR 292).  Plaintiff was in pain during that time but admits he did not see a doctor.  (TR 293).  Plaintiff took a bus to Alabama with his uncle.  (TR 292).

Plaintiff testified that he had trouble walking for long periods of time due to shortness of breath, however, he now has no trouble walking or going up and down stairs.  (TR 281, 288).  Plaintiff testified that sitting for long periods of time causes his back to cramp up.  (TR 287).  He testified that he cannot lift his right hand as far as he could prior to the injury yet he has no trouble with operating buttons or zippers.  (TR 281).  Plaintiff testified that he can lift a gallon of milk, make a fist, grasp and pick up objects, write a short note and open a jar depending on the kind of lid on it.  (TR 288).  Plaintiff has asthma for which he uses a Primatene Mist inhaler.  (TR 288).

The ALJ asked Plaintiff whether he had problems with anxiety and Plaintiff did not

3

understand the question.  (TR 282).  The ALJ explained it as becoming "afraid or fearful."  (TR 282).  Plaintiff testified in the affirmative and stated that he is afraid or fearful of "people in general" and he does not go out in public by himself.  (TR 282).  He "relives" the moment of feeling as if someone is going to shoot him and he breaks out in a sweat, starts shaking and gets nervous.  (TR 282).  Plaintiff explained that this happens when he is out in public alone or where he is in a group of people or "large surroundings."  (TR 283).  Plaintiff testified that he is able to attend church without having anxiety attacks because he has a "different understanding about that group of people."  (TR 285).

Plaintiff testified that he feels sad a lot and depressed.  (TR 283).  He testified that he started hearing voices in 2003 after he was shot.  (TR 296).  He stated that the voices tell him to take himself out and he feels that other people are talking about him.  (TR 283).  Plaintiff testified that he told the Social Security Agency doctor about the voices in 2003 but he did not tell his own Dr. Williams about it until January 2006 because he was afraid Dr. Williams would think he was losing his mind and put him "in the crazy house."  (TR 297).  He stated that he has problems with concentration and memory; it is difficult for him to focus on one thing and he has to be told something a couple of times before he remembers it.  (TR 284).

Plaintiff addressed a urine test that was positive for cocaine and marijuana by explaining that he had stopped using marijuana about two months prior to the hearing and that the cocaine was in his system because he was making crack cocaine, but he never used crack cocaine.  (TR 293-97).  Plaintiff and his friends made and sold crack cocaine for four to five months.   (TR 295-96).  Plaintiff testified that he had never worked in that type of situation other than during this particular period of time.  (TR 296).  Plaintiff testified that he smoked about five marijuana joints per day for

4

about fifteen years. (TR 294). He stopped when the effects of the marijuana did not agree with his medication. (TR 293-94).

**B.      Medical Evidence and Medical Expert Testimony**

Plaintiff's appeal focuses on evidence related to his mental impairments and Plaintiff did not appeal the ALJ's findings regarding his exertional and physical limitations. The Court has considered the entire record as required and will focus its discussion primarily on evidence related to Plaintiff's mental impairments.

Plaintiff suffered a gunshot wound to the back on March 27, 2003. (TR 70). A urine analysis performed at the time was positive for cocaine metabolites and cannabinoids. (TR 79). Plaintiff reported difficulty breathing and an x-ray revealed a three centimeter opacity in the right lower lobe of Plaintiff's lung, consistent with a contusion. (TR 85). In a face to face interview conducted March 31, 2003 the agency interviewer observed no difficulties with Plaintiff other than that he walked very slowly and favored his right side. (TR 49-50). In April 2003 Plaintiff continued to complain of pain related to the gun shot wound and lung contusion and reported difficulty breathing with standing and walking. (TR 95). Plaintiff was prescribed Vicodin and Motrin. (TR 95). Plaintiff was given Flexeril for reported muscle spasms in his back. (TR 160).

Plaintiff underwent a state agency examination with Bina Shaw, M.D., on June 11, 2003. (TR 100-04). Dr. Shaw noted that Plaintiff reported difficulty with bending and lifting heavy weight and continued to have pain at the site of the injury. (TR 100). Plaintiff reported urinary urgency, pain in the neck and shoulder blades and difficulty sleeping. (TR 101). Plaintiff was alert and oriented to time, place and person. (TR 101). Dr. Shaw noted full range of motion in all joints. (TR 101). Dr. Shaw concluded that psychiatric illness "needs to be ruled out for traumatic stress

5

syndrome" because Plaintiff was verbalizing feelings suggestive of traumatic stress syndrome.  (TR 101).  In June 2003 Plaintiff was also prescribed Periacton.  (TR 163).

On July 20, 2003 Plaintiff underwent a state agency psychiatric examination with R. Hasan, M.D.  (TR 105-07).  Dr. Hasan reported that Plaintiff had some difficulty remembering things, had some motivation and insight and his speech was slow and logical.  (TR 105-06).  Plaintiff was able to repeat four of four numbers forward and three of four numbers backward and recall one of three objects after three minutes.  (TR 106).  Dr. Hasan concluded that Plaintiff suffers from posttraumatic stress disorder and has a GAF of 55.  (TR 106).  Dr. E. A. Czarnecki completed a Mental Residual Functional Capacity Assessment on August 25, 2003 and concluded that Plaintiff has an anxiety-related disorder under 12.06 and has mild restrictions in activities of daily living and maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace and no episodes of decompensation.  (TR 121).  The evidence did not establish the existence of the "C" criteria.  (TR 122).

On September 8, 2003 state agency medical consultant Claudette A. Binsen concluded that Plaintiff has the Physical Residual Functional Capacity to occasionally lift and/or carry up to fifty pounds, frequently lift and/or carry twenty-five pounds, stand and/or walk about six hours in an eight-hour workday and is unlimited in his ability to push and/or pull except as limited with respect to lifting and carrying.  (TR 127).  Plaintiff should avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation but otherwise has no environmental limitations.  (TR 130).

Notes from Mercy Primary Care Center dated October 8, 2004 report that Plaintiff last visit was fifteen months prior.  (TR 166).  In October 2004 Plaintiff complained of swollen right ear and inflamed hemorrhoid.  (TR 166-67).  Notes from Mercy Primary Care Center dated October 18,

2005 report that Plaintiff's last visit was one year ago.  (TR 173).  Plaintiff reported a toothache and continued discomfort from his hemorrhoids.  (TR 173).  On October 19, 2004 Plaintiff was reported to be "underweight."  (TR 168).

Notes from Mercy Primary Care Center from January 10, 2006 report that Plaintiff complained of depression.  (TR 142).  Notes dated March 14, 2006 report that Plaintiff did not notice an improvement in his mood from taking Effexor but was taking Seroquel and sleeping well.  (TR 138).  Notes from April 2006 show that Plaintiff complained of Depression and was prescribed trial Wellbutrin and advised to continue Seroquel.  (TR 136).

Pamela Williams completed mental and physical assessment forms on January 17, 2006.  (146-50).  Plaintiff argues that Dr. Williams is a treating source who should be granted controlling weight.  (TR 145).  Dr. Williams opined that Plaintiff has severe major depression with suicidal urges at times, irritable behaviors and severe fatigue.  (TR 148, 150).  Dr. Williams concluded that "[i]t would be extremely difficult for him to sustain any type of meaningful employment [at] this time."  (TR 148).  Dr. Williams concluded that Plaintiff has the physical capacity to lift up to ten pounds, sit three hours in an eight-hour workday, stand two hours in an eight-hour workday and walk for one hour in an eight-hour workday.  (TR 149).  Plaintiff must never stoop, crouch or bend and could only occasionally climb, balance, kneel, crawl, push or pull, reach, handle or feel.  (TR 149).  Dr. Williams concluded that Plaintiff is unable to work in his last occupation and is unable to work at any full time occupation.   (TR 149).  Dr. Williams noted that Plaintiff must rest frequently, two to three times daily for fifteen to thirty minutes each time.  (TR 150).

Medical expert Dr. Ellen Rozenfeld testified at the hearing.  (TR 298-313).  Dr. Rozenfeld

described Plaintiff's mental impairments as a diagnosis of post traumatic stress disorder (PTSD) in

July 2003, major depressive disorder in January 2006 and poly substance abuse.  (TR 299).  Dr.

Rozenfeld opined that Plaintiff has mild difficulties in activities of daily living, moderate difficulties

in social functioning, concentration, persistence and pace and no episodes of decompensation.  (TR

300).  She concluded that Plaintiff has "the capacity to perform simple, routine, unskilled tasks with

moderate limitations in attending and concentrating for extended periods of time.  Some moderate

limitations in terms of socially with possibly being distracted by coworkers, . . . ."  (TR 300).  She

opined that he would be able to handle supervisors, coworkers and the general public and that her

assessment incorporates Plaintiff's history of drug and alcohol abuse.  (TR 301).

Plaintiff's representative questioned Dr. Rozenfeld regarding Plaintiff's performance on the

mental evaluations, including Plaintiff's response that six times five equals twenty-four.  (TR 304-

08).  Dr. Rozenfeld was unable to conclude that Plaintiff had an IQ of 70 in any one of the areas of

performance, verbal or full scale intelligence and what, if any, deficits were indicated by Plaintiff's

responses.  (TR 307-08).  Dr. Rozenfeld pointed out that none of the professionals who had seen

Plaintiff had suggested that he was functioning with an IQ in the retarded range.  (TR 307).

## C.    Vocational Expert Testimony

The Vocational Expert (VE) testified that Plaintiff's past work in salad preparation was

semiskilled and light to medium exertion due to lifting fifty pounds of roast beef, as indicated in his

file.  (TR 315).  The ALJ also questioned the VE on the skill and exertion necessary to manufacture

crack cocaine.  (TR 315).  The VE testified that she was "not an expert" in that area but that it

seemed to be in the light range.  (TR 315).

The ALJ asked the VE to assume an individual with the Plaintiff's age, education and work

experience who could "do the entire universe of exertional or non-exertional work" with the exception of being limited to lifting twenty pounds frequently and ten pounds occasionally, limited to occasional reaching with the right arm, needed to avoid concentrated exposure to pulmonary irritants and was limited to occasional contact with the general public, coworkers and supervisors. The hypothetical individual would be further limited to jobs requiring only the ability to follow simple instructions, perform simple tasks, perform an ordinary, simple routine and make simple job-related decisions. (TR 315-16). The VE testified that such an individual could not perform Plaintiff's past relevant work. (TR 316).

The VE testified that such an individual could perform jobs which are frequently identified as "light level" jobs and gave examples of a hand packer (15,855 jobs available in the Detroit area) and machine tender (8,359 jobs available in the Detroit area). (TR 316). The VE testified that his testimony is consistent with the Dictionary of Occupational Titles (DOT). Plaintiff's representative asked the VE whether someone who would be away from his work for twenty-five percent of his work day would be able to perform these jobs. (TR 318-19). The VE testified that such a person would have difficulty performing these jobs or any other job in the national economy. (TR 319-20).

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION:

The ALJ found that although Plaintiff was insured for benefits through December 31, 2009, had not engaged in substantial gainful activity since the alleged onset date of March 26, 2003, and suffered from asthma, history of a gunshot wound and an anxiety/depressive disorder, considered a severe combination of impairments, he did not have an impairment or combination of impairments that met or equaled the Listing of Impairments. (TR 19-20). Additionally, the ALJ found that Plaintiff's statements about his limitations were not entirely credible. (TR 20). The ALJ found that

Plaintiff was not capable of performing his past relevant work however, Plaintiff retained the residual functional capacity to perform a limited range of light work and there are a significant number of jobs in the economy which he could perform.  (TR 21-22).  Therefore, he was not suffering from a disability under the Social Security Act.  (TR 22-23).

**V.**     **LAW AND ANALYSIS:**

   **A.     Standard of Review**

   Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

   In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Commissioner*, 203 F.3d 388, 389-90

10

(6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

## B.    Framework For Social Security Disability Determinations

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1)    he was not presently engaged in substantial gainful employment; and

(2)    he suffered from a severe impairment; and

(3)    the impairment met or was medically equal to a "listed impairment;" or

(4)    he did not have the residual functional capacity to perform his relevant past work.

*See* 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).  If Plaintiff's impairments prevented him from doing his past work, the Commissioner, at step five, would consider his residual functional capacity ("RFC"), age, education and past work experience to determine if he could perform other work.  If he could not, he would be deemed disabled.  *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualification to perform specific jobs."  *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"  *Id.* (citations omitted).

Plaintiff argues that new and material evidence requires a sentence six remand, the ALJ erred

11

in failing to send Plaintiff for IQ testing, the ALJ failed to consider the record as a whole, including Plaintiff's mental impairments which were not included in the RFC, the ALJ erred in his credibility determination and the ALJ failed to meet his burden at step five of the analysis with respect to the hand packer jobs.

## C.     Analysis

### 1.     *Whether Plaintiff Is Entitled To A Sentence Six Remand On The Basis Of Newly Provided Evidence*

Plaintiff included with his brief evidence which he argues is new and material and should be considered on remand.  (Docket no. 23).  Plaintiff argues that this new evidence develops earlier findings and shows that Plaintiff has below average cognitive functioning and a full scale IQ of 62, which shows mild mental retardation.  Plaintiff argues that the evidence is material because it confirms the testimony of the medical expert, Dr. Rozenfeld, who testified that she could not be certain that Plaintiff's IQ scores were below 70, but that his cognitive functioning was below average.  (Docket no. 23; TR 308).  Correspondence from the Appeals Council shows that it considered this evidence consisting of medical records from Northeast Guidance Center dated August and September 2006, a Jefferson Medical Industrial Clinic psychiatric evaluation dated December 23, 2006, and a psychological evaluation by Edward A. Czarnecki, Ph.D., dated March 8, 2007.  (TR 7).

Regarding the issue of new evidence, the "court is confined to review evidence that was available to the Secretary, and to determine whether the decision of the Secretary is supported by substantial evidence."  *Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  The court may still remand the case to the ALJ to consider this additional evidence but only upon a showing that the evidence is new and

12

material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). This is referred to as a "sentence six remand" under 42 U.S.C. § 405(g). *See Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 549 (6th Cir. 2002). The party seeking remand has the burden of showing that it is warranted. *See Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357 (*citing Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984)). "In order for the claimant to satisfy his burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711 (*citing Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)). "Evidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial." *Wyatt*, 974 F.2d at 685 (*citing Sizemore*, 865 F.2d at 712).

As an initial matter, the ALJ did not err in failing to obtain additional testing or evidence with respect to Plaintiff IQ. *See Foster*, 279 F.3d at 355. "An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Id.* The Court finds that there was substantial evidence in the record supporting the ALJ's findings regarding Plaintiff's mental impairments, including a consultative psychiatric examination completed by Dr. Hasan on July 20, 2003 and mental and physical assessment forms completed by Dr. Williams on January 17, 2006. (TR 105-06, 146-50). The ALJ is correct that, despite the psychiatric evidence in the record, there is a "complete absence of any suggestion by any medical professional who

13

treated or examined the claimant" of an intellectual impairment and no basis for finding an intellectual limitation. (TR 20). The medical expert, Dr. Rozenfeld, testified that Plaintiff was seen by professionals, "none of whom have suggested that he is functioning with an IQ in the retarded range." (TR 307).

Plaintiff now seeks to show such a limitation by providing evidence after both the hearing and the ALJ's decision in this matter. Plaintiff argues that the material is new because it did not exist at the time of the hearing. (Docket no. 23). The evidence which Plaintiff offers is all dated after the July 26, 2006 ALJ decision. It is not enough that the evidence be new, the new evidence must relate to the period on or before the ALJ's decision. 20 C.F.R. § 404.970(b).

Plaintiff provided a Clinical Assessment dated August 14, 2006 performed by two social workers. The Court finds that the Clinical Assessment does not provide new evidence related to the period in question. (Docket no. 23-5, pp. 7-15). Other than the report of Plaintiff's marijuana use and the diagnosis of substance abuse problems, it does not reference any new issues which were not presented and considered at the time of the ALJ's decision, including Plaintiff's subjective complaints and descriptions of mental impairments and conditions. (Docket no. 23-5, p. 14). Furthermore, the Clinical Assessment does not address the issue raised by Plaintiff of intellectual limitations. The Clinical Assessment shows that although Plaintiff's education is listed as "inadequate," he did not participate in special education. For the same reasons, the Plan of Service dated September 6, 2006 does not provide new or material evidence. (Docket no. 23-5, pp. 16-20). The Medical Activity Tickets dated September 6 and 29, 2006 and the psychiatric evaluation dated December 23, 2006 likewise focus on Plaintiff's complaints of depression, paranoia (including people talking about him), allegations of hearing voices and other complaints which were raised in

14

the record below.  (Docket no. 23-5, pp. 21-29, TR 283, 297).  To the extent Plaintiff reported that his depression or other conditions had gotten worse, a change in condition after the hearing is immaterial.  *See Wyatt*, 974 F.2d at 685.  The Court finds that these documents do not provide new evidence related to the period up to the ALJ's decision.

Plaintiff alleges that the evidence is material to the requirements of 20 C.F.R. § 404, Subpart P, Appendix 1, Listing 12.05, to establish mental retardation, or because it would otherwise generate a favorable decision by the ALJ.  (Docket no. 27).  Listing 12.05 initially requires "significantly subaverage general intellectual functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R. § 404, Subpart P, Appendix 1, Listing 12.05.  The Listing also requires evidence of any one of four sets of criteria.

Plaintiff provided a Report of Psychological Evaluation dated March 8, 2007 performed by Edward A. Czarnecki, Ph.D.  (Docket no. 23-5, pp. 36-39).  The March 8, 2007 Report contains the results of Plaintiff's Wechsler Adult Intelligence Scale-III (WAIS-III) and Wide Range Achievement Test 3 (WRAT).  (Docket no. 23-5, pp. 36-39).  On the WAIS, Plaintiff received a verbal IQ score of 68, a Performance IQ score of 60 or 68 (it is unclear on the copy provided to the Court) and a Full Scale IQ score of 62.  (Docket no. 23-5).  This evidence is new because the record before the ALJ did not contain an evaluation of Plaintiff's IQ scores.

The evidence must also relate to the period prior to the ALJ's decision and the Plaintiff must demonstrate that the evidence is material.  To do so, Plaintiff must demonstrate that there is a reasonable probability that the ALJ would have reached a different disposition if he were presented with the new evidence.  Plaintiff has not done so.  First, it is not clear that the IQ results related to

15

the period prior to the ALJ's decision, or prior to Plaintiff's twenty first birthday.  The evaluator, Dr. Czarnecki, concludes that the IQ scores fall within the range of mental retardation and stated that "[e]ven though there are no IQ scores available during the developmental period, the work history, education history and Activities of Daily Living suggest that this was very likely his level of functioning since childhood."  (Docket no. 23-5, pp. 38).  Dr. Czarnecki bases this on Plaintiff's subjective report that he had attended both "mixed and special education classes."

There is conflicting evidence in both the existing record and the new evidence, including the August 14, 2006 clinical assessment, in which Plaintiff reports that he was not in special education classes.  (Docket no. 23-5, pp. 12, 14, 37, TR 45).  With respect to Plaintiff's prior work, Dr. Czarnecki's conclusions about Plaintiff's level of functioning at work appear to be based on Plaintiff's subjective reports and are not supported by the VE's or Plaintiff's testimony at the hearing or evidence in the record before the Court.  Plaintiff was engaged in his prior job for ten years and, other than Dr. Czarnecki's March 8, 2007 report, there is no evidence in the record that Plaintiff's work was something less than prior relevant work experience, which the VE classified as semi-skilled and up to medium in exertion as Plaintiff performed it.  (TR 43, 51-52, 280-81, 315).  *See Foster*, 279 F.3d at 354-57 (claimant had an IQ in the 68-69 range, prior work experience demonstrated an ability to perform relatively complicated tasks, the record evidence did not support onset of deficits in adaptive functioning before the age of 22 and there was no indication that claimant obtained her jobs through assistance or family connections); *Cf. David v. Comm'r of Soc. Sec.*, 2009 U.S. Dist. LEXIS 9786 (E.D. Mich. Feb. 10, 2009) (In addition to IQ scores between 54 and 58, the record below contained evidence other than claimant's own testimony regarding his participation in special education classes, evidence that his employment was by virtue of his family

connections, and testimony that claimant's mother was his primary caretaker and performed some of his hygiene tasks.).

The new evidence presented by Plaintiff also contains conflicting reports about Plaintiff's drug use. Dr. Hasan's December 23, 2006 report notes that Plaintiff denies using alcohol or drugs. The August 14, 2006 Clinical Assessment noted that Plaintiff has marijuana substance abuse problems. (Docket no. 23-5 p. 14). The psychiatrist who completed the September 6, 2006 Psychiatric Evaluation noted that Plaintiff reported marijuana use since age fourteen, his last use was the day prior to the evaluation, and use was at the rate of smoking four times per day. (Docket no. 23-5 p. 24). The evaluating psychiatrist diagnosed Plaintiff with major depressive disorder with psychotic features and cannabis dependence. (Docket no. 23-5, p. 28). Although the issue of substance abuse is not before this Court on the appeal of the parties, the issue of drug use was raised in the record below and if this case were remanded for consideration of the new evidence, it is not clear what effect the issue of substance abuse would have on the ALJ's consideration of Plaintiff's impairments, including Plaintiff's level of intellectual functioning. Under 42 U.S.C. § 423 (d)(2)(C) and 20 C.F.R. §§ 404.1535 and 416.935 the ALJ is required to make a determination about whether alcoholism or drug addiction is a contributing factor material to a disability determination. *See* 42 U.S.C. § 423(d)(2)(C), 20 C.F.R. §§ 404.1535 and 416.935. For all of these reasons, the Court cannot find that the new evidence has a reasonable probability of changing the ALJ's decision. The evidence provided by Plaintiff is not material.

Plaintiff alleges that he has good cause for failing to provide the evidence prior to the hearing because the ALJ refused to send Plaintiff for IQ testing per Plaintiff's representative's request at the hearing. (Docket no. 23). This is not a valid reason for failing to provide the evidence. *See Foster*,

17

279 F.3d at 357 (The claimant's allegation that the ALJ's failure to respond to her requests for additional testing was the reason for her own failure to acquire and present evidence was not just cause for her delay in submitting the evidence.).  As set forth above, the ALJ did not err in exercising his discretion and deciding not to obtain additional evidence and Plaintiff has not given a valid reason for failing to provide this evidence prior to the hearing.  *See Oliver v. Secretary of Health and Human Services*, 804 F.2d 964, 966 (6th Cir. 1986).  The Court should not remand this case for consideration of the recently provided evidence.

**2.**     ***Whether the ALJ's Credibility Findings Are Supported By Substantial Evidence***

Plaintiff argues that the ALJ erred in assessing Plaintiff's credibility.  "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters,* 127 F.3d at 531.  Credibility assessments are not insulated from judicial review.  Despite deference due, such a determination must nevertheless be supported by substantial evidence.  *Id.*  An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p.  "It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'"  *Id.*

Furthermore, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective

18

medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). In addition to objective medical evidence, the ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

The ALJ found that Plaintiff's subjective complaints are not fully credible. (TR 20-21). The ALJ cited specific reasons for discounting Plaintiff's credibility, including the lack of treatment for one full year despite Plaintiff's complaints of ongoing chest pain and Plaintiff's denial of drug use despite objective medical evidence showing blood tests showing positive results for cocaine and marijuana. (TR 21, 166-67, 173). The ALJ also pointed to Plaintiff's activities of daily living and noted that they were mildly limited, however, Plaintiff was independent in his activities of daily living and had the ability to care for his son on alternate weekends. Plaintiff testified that he takes his son to the park, reads to him and feeds him. (TR 284). With the questionable testimony regarding the tasks necessary to manufacture and sell crack cocaine aside[1], the record contains ample substantial evidence to support the ALJ's findings. The ALJ pointed out that Plaintiff's ability to concentrate appears to be affected, yet Plaintiff testified that he is able to assist his mother in

---

[1]Neither party has briefed the issue regarding whether the VE or any other expert may testify to the tasks required to manufacture an illegal street drug. The VE admitted that he was not an expert in this area and the medical expert did not testify to the skills or tasks necessary to manufacture crack cocaine. (TR 312-13, 315).

19

remembering her medications.  (TR 20, 285).  Plaintiff also testified that he reads the Bible and "little novels."  (TR 286).  The ALJ noted that Plaintiff's testimony that he stopped manufacturing crack cocaine because it was wrong is evidence of Plaintiff's competence and ability to understand what he was doing.  The ALJ's finding that Plaintiff's subjective statements about his limitations were not entirely credible was clearly explained and is supported by substantial evidence.  SSR 96-7p.

### 3.    *Whether the ALJ Erred in Failing to Mention All Medical Evidence of Record*

Plaintiff argues that the ALJ failed to consider the medical record as a whole and the RFC does not account for Plaintiff's mental impairments.  Plaintiff specifically argues that the ALJ did not provide reasons for discounting the medical expert's diagnosis of post traumatic stress disorder (PTSD) and depressive disorder, Dr. Hasan's July 20, 2003 diagnosis of PTSD and Dr. Williams's diagnosis of major depressive disorder[2].  (Docket no. 23, p. 19).  Plaintiff focuses on the ALJ's discussion of the tasks necessary to make crack cocaine and alleges that the ALJ relied on this testimony and ignored the medical opinions of Dr. Hasan and Dr. Williams.

The ALJ is required to consider the applicant's medical situation as a whole.  *See Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004).  Although the ALJ is not required to discuss every piece of evidence in the record, an ALJ should discuss evidence that, if believed, could lead to a finding of disability.  In reviewing the ALJ's decision, the Court must scrutinize the record in its entirety.  *See Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992).

Contrary to Plaintiff's assertion, the ALJ thoroughly considered the evidence from

---

[2] Plaintiff does not, however, argue that the ALJ did not properly consider the diagnosis of poly substance abuse, which appears in the record with the medical expert's testimony.  *See* 42 U.S.C. § 423 (d)(2)(C) and 20 C.F.R. §§ 404.1535, 416.935.  (TR 299).

Plaintiff's doctor, the medical expert and the DDS physician, aside from the ALJ's discussion of the tasks and skills necessary to manufacture and sell crack cocaine.  (TR 19).

Dispositive administrative findings relating to the determination of a disability and Plaintiff's RFC are issues reserved to the Commissioner.  *See* 20 C.F.R. §§ 404.1527(e), 416.927(e).  The ALJ "is not required to accept a treating physician's conclusory opinion on the ultimate issue of disability."  *Maple v. Apfel*, 14 Fed. Appx. 525, 536 (6th Cir. 2001); *see also* 20 C.F.R. §§ 404.1527(e), 416.927(e).  Therefore, the ALJ did not err in failing to adopt Dr. Williams's conclusion that "it would be extremely difficult for [Plaintiff] to sustain any type of meaningful work at this time."  (TR 148).  The ALJ considered and referenced in his decision Dr. Williams's evaluation that Plaintiff is "markedly" or "extremely" limited in several activities involved in Understanding and Memory and Sustained Concentration and Persistence.  (TR 146-47).  The ALJ incorporated this evidence in his finding that Plaintiff has some functional limitations due to the depression.  (TR 20).  The ALJ also noted that although Dr. Williams was a treating physician, she is not a psychiatrist and Dr. Williams's evaluation was not accompanied by objective medical findings.  (TR 19-20).  The ALJ also pointed out that other mental evaluations showed only mild to moderate limitations and difficulties, including Dr. Hasan's examination.

Dr. Hasan diagnosed Plaintiff with PTSD, Dr. Williams diagnosed Plaintiff with severe major depression and the medical expert, Dr. Rozenfeld diagnosed Plaintiff with PTSD, major depressive disorder and poly substance abuse.  (TR 299).  The ALJ incorporated the diagnosis of anxiety/depression in his findings.  (TR 19).  The ALJ went on to discuss why, despite the diagnosis of PTSD, Plaintiff did not meet the either the B or C criteria or listing 12.06 and fully discussed the findings of the consultative examination in which Dr. Hasan diagnosed Plaintiff with PTSD.  The

ALJ specifically considered Dr. Hasan's diagnosis that Plaintiff has a GAF of 55 and noted that this is the middle of the range of moderate symptoms or functional limitations. (TR 19). Dr. Hasan's diagnosis does not provide evidence of mental limitations other than or greater than those included in the ALJ's RFC. (TR 105-07). DDS physician Dr. Czarnecki's Mental Residual Functional Capacity Assessment and Psychiatric Review Technique showed moderate difficulties in maintaining concentration, persistence or pace and mild restrictions in activities of daily living and difficulties maintaining social functioning. (TR 108-24).

The RFC incorporates mental limitations including that Plaintiff be limited to work requiring the ability to follow only simple instructions, perform simple tasks and only occasional contact with the general public, coworkers and supervisors. The ALJ properly considered the evidence of mental impairments and conditions and incorporated Plaintiff's mental limitations into RFC and the hypothetical question to the VE. (TR 19-21). His findings are supported by substantial evidence.

**4.** **_Whether the ALJ Met His Burden At Step Five Of The Analysis_**

Finally, Plaintiff argues that the ALJ failed to show that there is a significant number of jobs Plaintiff can perform because the VE did not provide DOT codes for either job and neither job accounts for only "occasional reaching with the right arm." (Docket no. 23). The ALJ concluded that Plaintiff has the RFC to perform light work activity limited to work with no exposure to pulmonary irritants and airborne pollutants, work requiring the ability to follow simple instructions and simple tasks with only occasional contact with the general public. (TR 21). The ALJ's RFC, clearly stated on page 5 of his decision, does not contain a limitation to occasional reaching, or occasional reaching with the right arm, despite the ALJ's later statement of this limitation on page 6 of his decision in the discussion of Plaintiff's past relevant work. (TR 21-22). The ALJ

22

mentioned the limitation to occasional reaching in his discussion that a light RFC is appropriate, however, he did not conclude that Plaintiff had this limitation in his RFC. A finding that Plaintiff was limited to occasional reaching was not necessary to the ALJ's determination that Plaintiff could not perform his past relevant work because the VE had testified that Plaintiff's past relevant work as performed was sometimes performed at a medium exertional level, which exceeded Plaintiff's RFC for a limited range of light work[3].  (TR 22).

 As set forth above, at step five, the Commissioner must prove that there is "work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391.  The substantial evidence on which the ALJ bases this decision may be in the form of vocational expert testimony in response to a hypothetical question if the question accurately portrays Plaintiff's impairments. *See Varley*, 820 F.2d at 779 (citations omitted).

In a hypothetical question posed to the vocational expert ("VE"), an ALJ is required to incorporate only those limitations which he finds credible and supported by the record. *See Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1235 (6th Cir. 1993).  As set forth above and contrary to Plaintiff's assertion, the ALJ properly weighed Plaintiff's credibility and the findings are supported by substantial evidence.

The ALJ determined that Plaintiff has the RFC to perform a limited range of light work.  Due to Plaintiff's non-exertional limitations, the ALJ properly referenced the regulations, Pt. 404, Subpt. P, App. 2, Rule 202.18, as a framework which would direct a conclusion of "not disabled" and

---

[3]Light exertion work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). Medium exertion work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

23

further relied on the VE's testimony to determine what effect Plaintiff's non-exertional limitations would have on the number of jobs available in the economy. (TR 22).

The ALJ's hypothetical question to the VE contained all of the restrictions of the RFC and contained the additional restrictions to occasional reaching with the right arm, performing an ordinary simple routine and making simple job-related decisions. (TR 315-16). The VE testified in response that the available jobs were hand packer and machine tender. (TR 316). The hypothetical contained all of the limitations of the RFC and the ALJ therefore correctly relied on the VE's testimony as substantial evidence of jobs available which Plaintiff can perform.

SSR 00-4p provides that the adjudicator must resolve a conflict between the DOT and the VE "before relying on the VE . . . evidence." The ALJ asked the VE whether his testimony was consistent with the Dictionary of Occupational Titles (DOT). (TR 316). The VE testified that the testimony was consistent. Plaintiff and his representative had a full opportunity to cross-examine the VE on this issue and with respect to DOT codes, and, in fact, did cross-examine the VE on other issues. The ALJ properly questioned the VE on whether his testimony conflicted with the DOT and Plaintiff provided no legal authority or fact in the record which would otherwise indicate that there is a conflict between the VE's testimony and the information provided in the DOT. *See Lindsley v. Comm'r of Soc. Sec.*, ___ F.3d ___, 2009 WL 818948 at *4-5 (6th Cir. Mar. 31, 2009).

Finally, Plaintiff argues that neither job provided by the VE accounts for the Plaintiff's "occasional reaching with the right arm." (Docket no. 23, p. 24.) Plaintiff has provided no reason to discount the VE's testimony in response to the hypothetical which contained this limitation and this is not a limitation in Plaintiff's RFC. Therefore, any failure to discuss this limitation with respect to the DOT is harmless error. The ALJ's RFC is supported by substantial evidence, the

24

ALJ's hypothetical question to the VE contained Plaintiff's limitations and the ALJ properly relied on the VE's testimony to find that there is a significant number of jobs available which Plaintiff can perform. The ALJ's finding at step five that there is a significant number of jobs in the economy which Plaintiff can perform is supported by substantial evidence.

## VI.   CONCLUSION

In sum, the Commissioner's decision to deny benefits is supported by substantial evidence and there is insufficient evidence for the undersigned to find otherwise. Accordingly, Plaintiff's Motion for Summary Judgment (docket no. 23, 27) should be denied, that of Defendant (docket no. 26) granted and the instant Complaint dismissed.

### REVIEW OF REPORT AND RECOMMENDATION:

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing

party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: April 17, 2009                         s/ Mona K. Majzoub_____
                                              MONA K. MAJZOUB
                                              UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: April 17, 2009                         s/ Lisa C. Bartlett_____
                                              Courtroom Deputy

26